Louise McPHERSON, Plaintiff–
Appellant,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, Theresa Europe, indi-
vidually, Susan W. Holtzman, individ-
ually and Sherry Bokser, individually
and as Senior Associate Counsel of
New York State United Teachers, De-
fendants–Appellees.

Docket No. 05–4387–CV.

United States Court of Appeals,
Second Circuit.

Argued: April 17, 2006.

Decided: July 13, 2006.

Rochelle M. Sirota, Rego Park, NY, for Plaintiff–Appellant (on submission).

Deborah A. Brenner, Assistant Corporation Counsel of the City of New York, (Michael A. Cardozo, Corporation Counsel of the City of New York on the brief, Barry P. Schwartz, Assistant Corporation Counsel, of counsel) New York, NY, for Defendants–Appellees.

Before McLAUGHLIN, JACOBS, and B.D. PARKER, Circuit Judges.

JACOBS, Circuit Judge.

Following an adverse employment action, plaintiff brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq, and the Due Process clauses of the Fifth and Fourteenth Amendments. Under Title VII, the filing of a federal discrimination suit is conditioned on (1) the previous timely filing of a charge with the Equal Employment Opportunity Commission ("EEOC") and (2) a decision by the EEOC to dismiss the charge against the employer (or the EEOC's failure to act within 180 days). Plaintiff here filed a timely charge with the EEOC, but withdrew it; filed another, which was untimely; and sued following the dismissal for untimeliness of the second filing. The United States District Court for the Southern District of New York (Hellerstein, J.), ruled that the federal civil complaint is time-barred, and we agree. The district court ruled that the ADEA and Due Process claims should be dismissed for lack of merit, and we agree.

## BACKGROUND

Louise McPherson, who worked as a provisional teacher for the New York City Department of Education ("DOE"), alleges that the termination of her employment (1) resulted from discrimination on account of race, national origin, and age, and (2) de-

prived her of liberty and property interests without due process of law.

In September 2000, DOE launched an investigation into an allegation that McPherson was using corporal punishment in the classroom. Investigator Michael Kondos—after interviewing McPherson, four students, and one parent—concluded that "the allegation of corporal punishment against Louise McPherson is substantiated" and that "Louise McPherson contacted a student witness in an attempt to coerce the student to lie." DOE discharged McPherson on December 11, 2000, and put her name on the "Ineligible/Inquiry" list, barring her from employment at any DOE school.

In July 2001, McPherson filed a charge against DOE with the EEOC and with the New York State Department of Human Rights, alleging termination on account of race, national origin, and age. While the charge was pending, McPherson's union-provided lawyer (defendant Sherry Bokser) broached settlement with DOE, which expressed willingness to negotiate on the understanding that, as part of any settlement, McPherson would agree to drop pending legal claims and release future claims. Allegedly on advice of her lawyer, McPherson unilaterally withdrew her state and federal discrimination allegations.[1] However, no settlement materialized. So, on October 24, 2002, McPherson filed a second set of charges with the EEOC and the New York State Department of Human Rights. Both agencies dismissed her charges as time-barred.

## DISCUSSION

The district court granted summary judgment, dismissing McPherson's dis-

crimination claims as (variously) untimely and meritless. The due process claim was dismissed for failure to demonstrate a protected property interest, for failure to show stigma, and for failure to take advantage of post-deprivation remedies. We review the district court's grant of summary judgment *de novo*. *Mackey v. Bd. of Educ.*, 386 F.3d 158, 163 (2d Cir.2004).

■ Under Title VII and the ADEA, a plaintiff can sue in federal court only after filing timely charges with the EEOC. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(f)(1); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir.2006). A private Title VII plaintiff must also first receive a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Holowecki*, 440 F.3d at 563.

### Title VII

A private plaintiff under Title VII must satisfy two conditions before commencing suit in federal court. First, the complainant must file timely administrative charges with the EEOC. If the complainant has instituted state or local proceedings with an agency that is empowered "to grant or seek relief from [a discriminatory employment] practice or to institute criminal proceedings with respect thereto," the complainant has 300 days from the occurrence of an adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e–5(e)(1). This timetable governs McPherson's claim, which was originally filed with a duly empowered New York state agency.

Second, the complainant must await dismissal of the administrative charge (or a failure to act):

---

1. EEOC regulations allow for the withdrawal of charges with the consent of the Commission. 29 C.F.R. § 1601.10

The record does not pinpoint the date McPherson withdrew administrative charges;

but it was no earlier than July 30, 2002, the date DOE informed McPherson that she would need to withdraw pending grievances as part of any settlement stipulation.

If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ..., the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought ... by the person claiming to be aggrieved....

42 U.S.C. § 2000e–5(f)(1). Such notification is called a "right-to-sue" letter because the notification is a prerequisite to suit (even though the notification does not indicate that *all* of the statutory prerequisites for suit have been met, and therefore does not bespeak a "right"). *NAACP v. Town of E. Haven*, 259 F.3d 113, 115 n. 4 (2d Cir.2001).

McPherson demonstrates that she filed a timely charge and received a right-to-sue letter, and thereby claims that she has satisfied the two requisites for filing a Title VII action in federal court, notwithstanding that there were two charges—one timely, one not—and that the right to sue letter was not issued in connection with the charge that was timely. We disagree, of course.

■■■ The timeliness requirement of Title VII "is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). As such, it is meant to "put the adversary on notice to defend within a specified period" and to promote "the right to be free of stale claims." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (internal quotations omitted). Both those ends would be frustrated if McPherson's argument prevailed: By withdrawing a timely administrative charge before it is decided (and before 180 days elapsed), the complainant could delay indefinitely the filing of a second charge that would produce a "right-to-sue" letter when dismissed as untimely. Nothing could more reliably defeat "the particular purpose of the filing requirement, to give prompt notice to the employer." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). We therefore hold that a right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed.[2]

Since McPherson sued on the basis of her dismissed untimely charge, we affirm the district court's dismissal.[3]

## ADEA

■■ No "right-to-sue" letter is needed in ADEA cases, *see Holowecki*, 440 F.3d at

---

2. The district court believed this issue was addressed in *Criales v. American Airlines, Inc.*, 105 F.3d 93 (2d Cir.1997). *See* Joint Appx. at 33. However, *Criales* stands for a different proposition: that a plaintiff may sue as the result of the dismissal of a timely-filed administrative charge, even if a plaintiff has also filed an untimely administrative charge. *Id.* at 95 ("[A] superfluous untimely administrative charge [is] irrelevant to [plaintiff's] right to proceed on his timely charge."). *Criales* satisfied both statutory requirements—a timely filing and an agency dismissal—in the context of a single administrative charge. That case therefore does not control this appeal, in which McPherson attempts to satisfy the two statutory requirements with two different administrative charges.

3. McPherson also raises equitable estoppel, claiming that she "was actively misled by defendants into withdrawing her July 2001 charge based on their promise to effect the restoration of her license." Appellant Br. at 30. This argument is unsupported by record evidence: During depositions, McPherson acknowledged that her lawyer convinced her to withdraw the administrative charge; it is also undisputed that DOE solicited withdrawal only as part of a draft settlement agreement that was never executed. *See* Joint Appx. at 97–98, 206–07.

563; so a complainant may exhaust the administrative process by withdrawing agency charges so long as the charge was pending with the EEOC for at least 60 days. *See Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 168 (2d Cir.1998). McPherson meets this exhaustion requirement: She timely filed her ADEA claim in July 2001, and withdrew it sometime after July 2002—that is, more than 60 days later. Compliance with the agency exhaustion requirement does not insulate a federal suit from dismissal as untimely, but "there is no clear statutory answer as to what time period governs [plaintiff's] bringing of suit or when that time period starts." *Id.* We do not undertake to clear up this statutory ambiguity, because McPherson's claim was properly dismissed on the merits.

To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (applying *McDonnell Douglas* to age discrimination claim). In a nutshell, a plaintiff first bears the "minimal" burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination. *Id.* (internal quotation omitted).

■ Assuming *arguendo* that McPherson made out a *prima facie* case, the DOE articulated facially "legitimate, non-discriminatory" reasons for firing her: the investigatory conclusions that she used corporal punishment and that she had tried to silence one of her child accusers. McPherson adduces no sufficient evidence to show that these proffered reasons are pretextual;[4] her main attack is on the *legitimacy* of the reasons, specifically, DOE's reliance on hearsay evidence contained in the Kondos investigatory report (the summaries of interviews conducted by Kondos).[5]

■ This Court has applied arguably inconsistent standards in evaluating the legitimacy of a reason given to justify a challenged employment action. Sometimes we treat "legitimate" and "non-discriminatory" as equivalent terms; other times, we treat the "legitimacy" requirement as demanding that a proffered reason reflect a legitimate business concern.[6]

4. Plaintiff speculates that she was dismissed to evade pension costs, but speculation alone is insufficient to defeat a motion for summary judgment. *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (party "may not rely simply on conclusory statements" to defeat summary judgment).

5. Plaintiff also claims that the proffered rationale is illegitimate in that reliance on it unlawfully deprived Plaintiff of due process. However, because we find Plaintiff's due process claim to be without merit, see infra, only the "hearsay" challenge remains.

6. *Compare Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir.2001) (interchangeably using terms "legitimate" and "non-discriminatory" in describing defendant's burden), *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 23 (2d Cir.1996) ("[Plaintiff] also asserts [ ] 'mixed motives'- *one legitimate, one discriminatory ....*" (emphasis added)), *Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997), *with Windham v. Time Warner, Inc.*, 275 F.3d 179, 188 (2d Cir.2001) ("We agree ... that [defendant] met its burden of producing evidence of a *legitimate business reason* for the terminations by demonstrating that the Department had less work." (emphasis added)); *Slattery v. Swiss Reinsurance Am. Corp.*, 248

There is some space between these two readings of the term "legitimate"; but neither formulation demands that any particular process be used in reaching employment decisions. More generally, McPherson is attacking the *reliability* of the evidence supporting DOE's conclusions. In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *"motivated* the employer," *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (emphasis added) (internal quotations omitted); the factual validity of the underlying imputation against the employee is not at issue.[7]

DOE's proffered reasons for firing McPherson are both non-discriminatory and responsive to legitimate institutional concerns. McPherson has failed to show either that these reasons are illegitimate or that they were pretexts. Therefore, the district court correctly dismissed McPherson's ADEA suit.

### Due Process

McPherson also claims that DOE deprived her of liberty and property rights without due process of law. These claims were both properly dismissed.

To state a deprivation of property claim under the Fifth and Fourteenth Amendments, a plaintiff "must have more than a unilateral expectation.... He must,

instead, have a legitimate claim of *entitlement* ...." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (emphasis added). An interest that can be terminated "at the whim of another person" is not protected by the Due Process clause. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir.1993) (treating at-will employment).

Because the Constitution does not create property interests, this Court must look to independent sources of rules and understandings to see if a property interest exists. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). McPherson's complaint does not allege that provisional teachers are guaranteed protection against dismissal without cause, and no evidence to that effect was offered in opposition to summary judgment. Having shown nothing more than a unilateral expectation of continued employment, McPherson failed to demonstrate that she enjoyed a property interest protected by the Constitution.

Likewise, Plaintiff's liberty interest claim was properly dismissed. "Stigmatizing statements by the government about an employee upon her discharge only implicate a liberty interest when there is also public disclosure." *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 631 (2d Cir.1996). The City has maintained that the reasons for placement on the "Ineligible/Inquiry List" re-

---

F.3d 87, 93 (2d Cir.2001) ("Certainly [plaintiff's] late reports, failure to lead, and incapacity to bring in new business—especially in the face of an express requirement that he do so—were *legitimate business reasons* for his probation and termination." (emphasis added)).

7. We are aware of the risk that false negative performance reports or arbitrary procedures may be employed to cover illegal discrimination. While such practices would arguably

result in a defensibly "legitimate" reason for the adverse employment action, bizarre or duplicitous processes might strengthen a plaintiff's showing of pretext. Here, plaintiff has made no such showing: In the business context, reliance on evidence (such as hearsay) that would be excluded by the Federal Rules of Evidence is insufficiently arbitrary and aberrant to support an inference of pretext.

main confidential, and Plaintiff has provided no evidence suggesting otherwise. *See generally McDonald v. Bd. of Educ.*, 2001 WL 840254 (S.D.N.Y. July 25, 2001), 2001 U.S. Dist. LEXIS 10325, *22–23 ("[Plaintiff] simply alleges that her name was placed on the Board's Ineligible/Inquiry List as having been fired 'for cause.' Nowhere does she assert that the List disclosed the stigmatizing grounds for her dismissal or that inclusion on the List gives rise to a per se inference that plaintiff was terminated for a reason sufficiently 'stigmatizing' to state a due process claim." (internal citations omitted)). In the absence of a demonstrated liberty or property interest, summary judgment was properly granted dismissing the due process claims.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.